UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KATHRYN SCHOTT, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:20-cv-00684-MTS |
| OVERSTOCK.COM, INC., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Kathryn Schott's Motions to Remand, Doc. [13], and to Engage in Limited Jurisdictional Discovery, Doc. [15]. The issues are fully briefed. For the following reasons, the Court will deny both Motions.

**I.   Background**

Plaintiff originally filed this putative class action in Missouri state court, making claims related to the amount of tax charged on her purchase of an item from Defendant Overstock, Inc.'s ("Overstock") website. Plaintiff's claims are fairly straightforward. She asserts in her Petition that she purchased Mules Faux Leather Slides from Defendant's website, www.overstock.com, for delivery to a Fenton, Missouri address. Doc. [5] ¶ 27. This purchased item was shipped from Iowa. *Id.* Plaintiff contends Overstock overtaxed her for the purchase.

According to Plaintiff, Missouri law sets out a taxing scheme that provides for a sales tax which, Plaintiff suggests, applies to all sales of tangible personal property between a Missouri seller and Missouri buyer. *Id.* ¶¶ 14–15. While the relevant statute generally levies a tax "upon all sellers for the privilege of engaging in the business of selling tangible personal property," Mo. Rev. Stat. § 144.020.1, there is an exemption from that provision for sales "made in commerce

1

between" Missouri and any other state. Mo. Rev. Stat. § 144.030.1. Plaintiff claims that this "in commerce" exemption applies to any "interstate, in-bound retail sales made between a seller from a non-Missouri location and a Missouri purchaser where the seller delivers the purchased tangible personal property from outside the state of Missouri to the purchaser's delivery address in Missouri." Doc. [5] ¶ 18. Such sales are not, however, entirely exempt from taxation; Missouri provides alternatively for a "use" tax that Plaintiff asserts is imposed on purchases that are exempt from sales tax under § 144.030.1. *Id.* ¶¶ 19, 21; *see also* Mo. Rev. Stat. § 144.610.1. On this basis, Plaintiff posits that taxable sales shipped from a location outside Missouri to a Missouri address are subject to this "compensating use tax," even if they are exempt from the sales tax. Doc. [5] ¶ 22. The vendor making the sale subject to use tax is responsible for collecting the use tax. *See id.* ¶ 23.

Overstock ran afoul of this tax scheme, Plaintiff argues, by charging excess tax on sales of products through "remote sales channels," which include "internet website[s], telephone, catalog or other remote communications systems." *Id.* ¶¶ 2, 25. She purports to bring claims on behalf of herself and all persons or entities who, in the five years prior to the inception of this action, purchased a product from Overstock via a remote sales channel that was shipped out-of-state to a Missouri address and was "charged tax monies at a higher tax rate than" the applicable use tax rate. *Id.* ¶ 26. As to her individual claims, Plaintiff states that the applicable use tax rate on the slides she purchased was 4.225% but Overstocked charged her 8.250% instead. *Id.* ¶¶ 28–29. As for the class, Plaintiff asserts that "thousands" of others similarly purchased products from Overstock through remote sales channels that were delivered to Missouri from an out-of-state location and were "illegally and erroneously charged tax monies at a higher tax rate rather than the lower use tax rate." *Id.* ¶ 34. Pursuant to her four claims—unjust enrichment, negligence, money

had and received, and one Missouri Merchandising Practices Act ("MMPA") claim—Plaintiff seeks, among other things, compensatory damages, namely the "return of the full amount of excessive taxes paid;" a preliminary and permanent injunction preventing Overstock from continuing to charge the higher tax rate; punitive damages; and attorney's fees. *Id.* ¶ 73.

Overstock removed the case to this Court on May 22, 2020, pursuant to diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). *See* Doc. [1]. In her Motion to Remand, Plaintiff challenges this Court's jurisdiction on the grounds that Overstock has not satisfied CAFA's $5 million amount-in-controversy requirement. Plaintiff raises two particular issues with the amount in controversy here: first, that Overstock has not provided sufficient evidence supporting that amount; and second, that even if Overstock has provided proper evidentiary support, it has "wholly overstated" its calculations in asserting that the claims meet CAFA's required monetary threshold.

## II. Legal Standard

At the outset, CAFA's purpose informs the Court's analysis: "A primary purpose in enacting CAFA was to open the federal courts to corporate defendants out of concern that the national economy risked damage from a proliferation of meritless class action suits." *Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 983 (8th Cir. 2019) (quoting *Bell v. Hershey Co.*, 557 F.3d 953, 957 (8th Cir. 2009)). Moreover, the Supreme Court has made clear that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

"To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'"

*Id.* at 83 (quoting 28 U.S.C. § 1446(a)). CAFA grants federal district courts original jurisdiction over class action cases where "the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Id.* at 84–85 (citing 28 U.S.C. § 1332(d)(2), (5)(B)). Even if the plaintiff's complaint does not state the amount in controversy, "the defendant's notice of removal may do so." *Id.* at 84. In such a case, it is sufficient for the defendant to provide "only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Pirozzi*, 938 F.3d at 983. But if the plaintiff challenges the amount in controversy, the district court must find, "by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Id.* (quoting *Dart Cherokee*, 574 U.S. at 88); *see also Dart Cherokee*, 574 U.S. at 88 (holding that when a defendant's assertion of the amount in controversy is challenged, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied"). In other words, a defendant need not, in its notice of removal, provide evidentiary submissions in support of its amount-in-controversy allegations; there, defendants need only "plausibly" allege the requisite amount. *Dart Cherokee*, 574 U.S. at 84, 89. It is only after the plaintiff contests the amount-in-controversy allegations that the defendant must provide evidence establishing the amount. *Id.* at 89. If the defendant succeeds in showing by a preponderance of the evidence that this case meets the $5 million threshold, "the burden then shifts to [the plaintiff] to prove that it is legally impossible for the class to recover the jurisdictional amount." *Embry v. T. Marzetti Co.*, No. 4:19-cv-02785-SEP, 2020 WL 5291933, at *2 (E.D. Mo. Sept. 4, 2020) (citing *Dammann v. Progressive Direct Ins. Co.*, 856 F.3d 580, 584 (8th Cir. 2017)).

Further, in establishing the amount in controversy, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or

4

value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6); *see also Faltermeier v. FCA US LLC*, 899 F.3d 617, 621 (8th. Cir. 2018) ("To determine whether the amount in controversy requirement is satisfied, a district court aggregates the claims of all named or unnamed persons who 'fall within the definition of the proposed certified class.'" (quoting *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013))).

**III. Discussion**

In her Motion to Remand, Plaintiff challenges only Overstock's allegations regarding the amount in controversy, leaving uncontested its claims regarding minimal diversity and the size of the class. The Court is satisfied that Overstock has sufficiently established both minimal diversity and the class size for purposes of diversity jurisdiction under CAFA. Thus, the only issue raised by Plaintiff's Motion to Remand is whether Overstock has established sufficiently CAFA's $5 million in controversy requirement. Plaintiff makes two alternative arguments that Overstock has not done so: first, that it has not provided facts or evidence in support of the claimed amount at issue; and second, that the amount in controversy simply does not exceed $5 million, as required by CAFA. Each of these arguments fails.

Plaintiff argues in her Motion to Remand that "the issue . . . is not whether it is likely that the amount in controversy will exceed $5 million, but whether Overstock has established that amount by a preponderance of the evidence." Doc. [14] at 6. The Court must, Plaintiff argues, consider the evidence "in the record at the time of removal," limited to the Petition and Notice of Removal. *Id.* Not so. The Supreme Court was clear in *Dart Cherokee* that removing defendants need only provide a "plausible" allegation that the amount in controversy exceeds $5 million; it is not until *after* the Plaintiff has challenged that allegation that the defendant must provide evidence. *See Dart Cherokee*, 574 U.S. at 89 ("Evidence establishing the amount is required by

5

§ 1446(c)(2)(B) only when the plaintiff contests . . . the defendant's allegation."). Plaintiff's Motion to Remand represents her first challenge to Overstock's amount-in-controversy allegation in the Notice of Removal. In opposition, Overstock provided a sworn declaration by Stephanie Muirhead, the Director of Tax for Overstock, see Doc. [22-1]. In that declaration, Muirhead stated that, between June 2018 and March 2020,[1] Overstock collected $2,882,407.16 in taxes on sales made on its website for which the purchased item was shipped to a Missouri address. *Id.* ¶ 6. Using its tax software, Muirhead avers that Overstock would have instead collected $2,063,617.03 had it applied the use tax to each of those sales,[2] making the difference between the tax actually collected and the use-tax amount $818,790.13. *Id.* Under *Dart Cherokee's* "two-phase framework for addressing the amount-in-controversy requirement," the court may properly consider Muirhead's affidavit as the "proof" Defendant submitted in support of its challenged amount-in-controversy allegation. *See Waters v. Home Depot USA, Inc.*, 446 F. Supp. 3d 484, 491 (E.D. Mo. 2020).

As to the alleged amount at issue, Overstock provided calculations for compensatory damages, attorney's fees, punitive damages, and the value of injunctive relief in arguing the matter exceeds $5 million in controversy. Starting with compensatory damages, in her Motion to Remand, Plaintiff contends that Overstock's calculations are "significantly overstated" because it applied a uniform 4.225% use tax rate to its gross receipts from June 2018 to March 2020, which

---

[1] Overstock provided the sales tax it collected for this timeframe only, though Plaintiff's Petition seeks to certify a class that includes purchases fitting the class definition going back to March 2015.

[2] Muirhead also noted that Overstock has maintained records of the city, state, and ZIP code to which each purchased item was shipped; its tax software uses that information to determine the proper tax amount, "including for purposes of calculating state and local use taxes under its 'Use Tax' setting." Doc. [22-1] ¶ 5. Using this data, Muirhead states that Overstock "re-ran" each of the transactions while applying the "Use-Tax" setting to arrive at the $2,063,617.03 figure. *Id.* ¶ 6. This analysis did not take into account sales made from remote sales channels other than Overstock's own website. *Id.* ¶¶ 3, 6. Further, Muirhead provided that she spot-checked around twenty of the transactions and confirmed that Overstock's tax software applied use tax rates that "were consistent with the state and local use taxes in effect for the Missouri delivery address for that point in time." *Id.* ¶ 7.

does not, as Plaintiff sees it, properly account for various local use taxes that may be applied on top of the statewide 4.225% rate. *See* Doc. [14] at 8–12. Regardless of the validity of this approach, Defendant amended its calculations in its Response to the Motion to Remand to address Plaintiff's concerns that its approach disregarded local use taxes. *See* Doc. [22] at 3–4. In the amended calculations, Overstock factored in the local use tax for *each* of the relevant transactions as opposed to blanketly applying 4.225%. *See* Doc. [22-1] ¶¶ 4–5; *supra* note 2; Doc. [22] at 5–7. This approach tracks exactly the one Plaintiff claims is proper in her Motion to Remand; indeed, Plaintiff does not even address Overstock's more specific damages calculation in her Reply, Doc. [24]. Far from "assumptions and speculation," the $818,790.13 figure for compensatory damages is well supported, and in any case Plaintiff has not, as *Dart Cherokee* contemplates, submitted any competing proof as to this amount. *See Waters*, 446 F. Supp. 3d at 491–92; *Femmer v. Sephora USA, Inc.*, 4:20-cv-676-JMB, 2020 WL 5632443, at *4 (E.D. Mo. Sept. 21, 2020).

Plaintiff next takes aim at Overstock's valuation of attorney's fees. The MMPA expressly authorizes an award of attorney's fees, see Mo. Rev. Stat. § 407.025.2(2), and such fees are included in amount-in-controversy calculations. *Embry*, 2020 WL 5291933, at *2; *see also Faltermeier*, 899 F.3d at 622 (including attorney's fees in assessing whether CAFA's required amount in controversy was met). Overstock argues that the Court may assume an award of attorney's fees comprising 33% of the actual damages, citing other CAFA cases permitting similar awards. Doc. [22] at 8. Based on the $818,790.13 it asserts in damages, Overstock concludes that an estimate of $272,930 in attorney's fees is reasonable here.[3] *Id.* Plaintiff counters that this amount is too speculative and unsupported. Doc. [14] at 12–14. But Overstock has produced evidence that a 33% attorney's fee award is possible in this case, see Docs. [1] ¶ 24, [22] at 8–9;

---

[3] Though Overstock states that it applied a 33% rate to reach $272,930, it appears that it actually used a 33.333% rate. The difference is negligible for purposes of the jurisdictional amount here.

7

Plaintiff, meanwhile, has not provided her own evidence or shown that a 33% attorney's fee award is legally impossible. *See Embry*, 2020 WL 5291933, at *3; *Femmer*, 2020 WL 5632443, at *4 (rejecting a plaintiff's challenge to an attorney's fees estimate where the plaintiff did not "submit any competing proof"); *Waters*, 446 F. Supp. 3d at 492 ("A class-action MMPA case involves some measure of 'risk and complexity' that often generates considerable fees."). It is not enough for her to simply dismiss Overstock's proffered amount as speculative; as such, Overstock has carried its burden with respect to attorney's fees.

Punitive damages similarly are included toward the amount in controversy. *See Pirozzi*, 938 F.3d at 984 (counting potential punitive damages award along with actual damages and attorney's fees in holding the CAFA $5 million threshold was met). Relevant to this case, the MMPA expressly authorizes an award of punitive damages, see Mo. Rev. Stat. § 407.025.2(1), and Plaintiff specifically seeks "punitive damages in an amount to be determined at trial." Doc. [5] ¶ 73(f).[4] Punitive damages under the MMPA are based on combined compensatory damages and attorney's fees. *See Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013). Here, using $818,790.13 in damages and $272,930 in attorney's fees, that total amount is $1,091,720.13. Overstock has provided numerous MMPA cases where the CAFA amount in controversy was at issue. Doc. [22] at 10. These cases clearly reflect that a punitive damages award at least four times the combined total of compensatory damages and attorney's fees is entirely plausible here.[5]

---

[4] The Eighth Circuit in *Pirozzi* emphasized the significance of the plaintiff's explicit request for punitive damages, comparing Pirozzi's case to *Hurst v. Nissan N. Am.*, 511 Fed. App'x 584 (8th Cir. 2013), where "the parties agreed that, at the time defendant removed, recovery of punitive damages was legally impossible." *Pirozzi*, 938 F.3d at 984 n.1. As the *Pirozzi* court noted, the Eighth Circuit counseled in *Hurst* that "should punitive damages find their way into the case for consideration by the [state court] jury, . . . immediate removal would be timely and almost certainly proper." *Id.* (quoting *Hurst*, 511 F. App'x at 586–87).

[5] *See, e.g.*, *Pirozzi*, 938 F. 3d at 984 (noting that the Eighth Circuit has approved of a 27:1 punitive damages ratio and holding that, "[g]iven the awards of punitive damages upheld in prior MMPA cases such as [*Grabinski v. Blue Springs Ford Sales, Inc.*, 203 F.3d 1024, 1026 (8th Cir. 2000)], plaintiffs' allegation that they are entitled to punitive damages in an unstated amount raised the amount in controversy to more than $5 million"); *Harrington Enters., Inc. v. Safety-Kleen Sys., Inc.*, 42 F. Supp. 3d 1197, 1201 (W.D. Mo. 2013) (finding that punitive damages five times the combined

Four times that amount is $4,366,880.52 in punitive damages; combining that amount with the $1,091,720.13 in damages and attorney's fees yields $5,458,600.65, easily clearing CAFA's amount-in-controversy hurdle.

Plaintiff contends that Overstock must do more than simply cite to other MMPA cases, arguing that it must provide more specific facts or evidence in its favor. *See* Doc. [24] at 7–9. Case law does not support this argument. In *Pirozzi*, for example, the Eighth Circuit used exactly this approach in finding that the CAFA jurisdictional threshold was met, referencing a case where a 27:1 punitive damages ratio was affirmed in holding that "plaintiffs' allegation that they are entitled to punitive damages in an unstated amount raised the amount in controversy to more than $5 million, whether or not they ultimately prove they are entitled to the punitive damages they claim." *Pirozzi*, 938 F.3d at 984; *see also Harrington Enters., Inc. v. Safety-Kleen Sys., Inc.*, 42 F. Supp. 3d 1197, 1200 (W.D. Mo. 2013) (rejecting argument that "specific facts or evidence" are necessary to show punitive damages are possible for CAFA amount-in-controversy purposes, noting that it is enough for a defendant to show that the plaintiff "requested them and could recover them under the law"). Plaintiff has provided no competing proof that punitive damages here cannot reach the amount necessary to push the amount in controversy over $5 million; thus, Overstock has carried its preponderance-of-the-evidence burden. To overcome this, Plaintiff must show "that it is legally impossible for the class to recover" the amount. *Embry*, 2020 WL 5291933, at *2; *see also Dammann*, 856 F.3d at 585.

---

amount of compensatory damages and attorney's fees plausible in holding CAFA's amount-in-controversy was met); *Baker v. NNW, LLC*, No. 15-00222-CV-W-GAF, 2015 WL 12843831, at *2 (W.D. Mo. June 1, 2015) (applying a 4.81:1 punitive damages to combined compensatory damages and attorney's fees ratio); *Kerr v. Ace Cash Experts, Inc.*, No. 4:10-CV-1645-DDN, 2010 WL 5177977, at *2 (E.D. Mo. Dec. 14, 2010) (citing MMPA cases permitting 3.98:1 and 6.7:1 punitive damages ratios in reaching the CAFA $5 million threshold).

She has not done so.  Plaintiff's attempt to dismiss Overstock's evidence as "speculative" is unpersuasive; she must do more to meet the "legal impossibility" standard.  *Embry*, 2020 WL 5291933, at *3.  Moreover, Plaintiff cannot avoid the inclusion of punitive damages here by simply downplaying *her own claim for punitive damages* as "conclusory" and arguing that "the Court is more likely to conclude that a reasonable fact finder would not award punitive damages."  Doc. [24] at 9; *see Raskas*, 719 F.3d at 888 ("Even if it is highly improbable that the Plaintiff[] will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard.").  Plaintiff would require that Overstock offer "factual support" for an "evil motive" justifying a punitive damages award.  *Id.*  This request vastly exceeds what Defendant must show here.  The amount in controversy "is simply an estimate of the total amount in dispute," not a conclusive assessment of that amount; indeed, the amount-in-controversy question is "not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are."  *Raskas*, 719 F.3d at 887; *see Waters*, 446 F. Supp. 3d at 492 ("Plaintiff's demand for evidentiary certainty goes beyond what is required under CAFA.  When the preponderance of evidence standard applies, 'the defendant's showing on the amount in controversy may rely on reasonable assumptions,' and there is no demand at the early stages of removal to conclusively establish damages." (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019))).  Overstock is not required to establish with certainty, against its own interests, that the Court will grant punitive damages here.

The Court finds, based on the compensatory damages, attorney's fees, and punitive damages claimed here, that the amount in controversy in this case exceeds $5 million by a preponderance of the evidence.  Plaintiff has not "establish[ed] to a legal certainty," *Dammann*, 856 F.3d at 584 (quoting *Bell*, 557 F.3d at 959), that her claims are for less than $5 million.  That

being so, the Court properly has jurisdiction under CAFA and need not reach the issue of the value of potential injunctive relief for purposes of jurisdiction.

## Conclusion

Overstock has provided sufficient evidence that the amount in controversy in this case, including potential compensatory damages, attorney's fees, and punitive damages, exceeds $5 million. As such, the Court has subject-matter jurisdiction under CAFA and the case will remain in federal court. Plaintiff's Motion to Remand, Doc. [13], is therefore denied. Based upon the foregoing, the Court also finds further discovery on these jurisdictional issues to be unnecessary. Therefore, Plaintiff's Motion to Engage in Limited Jurisdictional Discovery, Doc. [15], is also denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand, Doc. [13], is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Engage in Limited Jurisdictional Discovery, Doc. [15], is **DENIED**.

Dated this 15th day of January, 2021.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE